IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JAN 14 2016

Stephan Harris, Clerk
Cheyenne

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>SCOTT MICHAEL LEWIS<br>(Counts 1 and 2)<br><br>and<br><br>GILBERT WAYNE WILES, JR.,<br>(Counts 1 and 2)<br><br>        Defendants. | No.   16-CR-19-J<br><br>Ct. 1   18 U.S.C. § 371,<br>      49 U.S.C. § 46306(b)(6)(A)<br>      (Conspiracy to Operate an<br>      Unregistered Aircraft)<br><br>Ct. 2   49 U.S.C. § 46306(b)(6)(A) and 18<br>      U.S.C. § 2<br>      (Operating an Unregistered<br>      Aircraft and Aiding and Abetting)<br><br>      ** FORFEITURE NOTICE ** |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### INTRODUCTION

At all times relevant to this indictment:

    1.    Defendant **SCOTT MICHAEL LEWIS** was a certificated aircraft pilot and had been since 2010.

    2.    Defendant **GILBERT WAYNE WILES, JR.**, was a certificated aircraft pilot and had been since 2000.

    3.    Defendant **WILES** was a certificated flight instructor.

    4.    The Federal Aviation Administration (FAA) is a regulatory agency within the United States Department of Transportation charged, among other duties, with the administration, registration, and certification of domestic aircraft.

## COUNT ONE

From on or about December 11, 2012, through and including on or about February 28, 2014, in the District of Wyoming and elsewhere, the Defendants, **SCOTT MICHAEL LEWIS** and **GILBERT WAYNE WILES, JR.**, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with each other and with other persons unknown to the grand jury to commit an offense against the United States, that is, to willfully operate an unregistered aircraft, in violation of 49 U.S.C. § 46306(b)(6)(A).

## MANNER AND MEANS

1. It was part of the conspiracy that a person known to the grand jury caused an entity called Morris Point, LLC ("Morris Point") to be organized under the laws of the State of New Mexico.

2. It was further a part of the conspiracy that, with **LEWIS** present, **WILES** purchased a 1968 Cessna airplane, Model TU-206 "Super Skywagon," serial number U206-1189, bearing tail number N6214V ("the airplane") for approximately $130,000 cash.

3. It was further a part of the conspiracy that **WILES**, knowing the airplane's bill of sale would be filed with the FAA, instructed the airplane's seller to make the bill of sale out to Morris Point.

4. It was further a part of the conspiracy that neither **LEWIS** nor **WILES** submitted an Aircraft Registration Application to the FAA after **WILES** purchased the airplane, despite knowing they could not lawfully operate the airplane without submitting an Aircraft Registration Application as required under Title 49 of the United States Code and Title 14 of the Code of Federal Regulations.

5. It was further a part of the conspiracy that **LEWIS** would fly the airplane between various airports in the United States, knowing the airplane was not registered with the FAA as required by law.

6. It was further a part of the conspiracy that **WILES** would accompany **LEWIS** in the airplane on flights between various airports in the United States, knowing the airplane was not registered with the FAA as required by law, and available to take over flying the airplane if necessary.

7. It was further a part of the conspiracy that **WILES** and **LEWIS** would use aliases and false identifications when interacting with airport-based service providers and obtaining fuel, maintenance, and other services for the airplane.

8. It was further a part of the conspiracy that **LEWIS** and **WILES** would use cash or money orders to pay for fuel, maintenance, and other services for the airplane.

9. It was further a part of the conspiracy that, when obtaining maintenance and other services for the airplane, **WILES** would falsely claim he and **LEWIS** were working for an aerial photography business.

10. It was further a part of the conspiracy that **LEWIS** would fly the airplane under "Visual Flight Rules," permitting him to fly between airports in the United States without filing a flight plan.

11. It was further a part of the conspiracy that, while flying in the airplane, **LEWIS** and **WILES** would not announce the airplane's tail number over the radio and would not contact airports by radio before landing the airplane.

## OVERT ACTS

In furtherance of the conspiracy and in order to accomplish the objects thereof, the following overt acts were committed:

1. On or about December 11, 2012, a person known to the grand jury organized Morris Point under the laws of the State of New Mexico.

2. In or about April, 2013, **LEWIS** and **WILES** met with the airplane's seller in a hotel room in Austin, Texas, where **WILES** purchased the airplane from the seller for approximately $130,000 cash.

3. In or about June, 2013, **LEWIS** and **WILES** brought the airplane to Straight Flight, Inc., an aircraft service station at the Centennial Airport in Englewood, Colorado ("Straight Flight") for service.

4. In or about June, 2013, using the alias "Karl Stassney," **WILES** paid Straight Flight $620 in cash and $1700 in four money orders to pay for work Straight Flight performed on the airplane.

5. In or before October, 2013, **WILES** paid approximately $2200 cash to Vector Air, an aircraft service station located in Erie, Colorado, to purchase a Short Takeoff and Landing (STOL) kit.

6. In or about October, 2013, **LEWIS** and **WILES** took the airplane to Straight Flight to have Straight Flight install the STOL kit on the airplane.

7. In or about October, 2013, while dealing with Straight Flight, **LEWIS** used the alias "Steve" and **WILES** used the alias "Karl Stassney."

8. In or about October, 2013, after Straight Flight finished installing the STOL kit and performing other service on the airplane, **WILES**, using the alias "Karl Stassney," paid

Straight Flight a total of $12,332.15 in cash and money orders.

9. In November, 2013, **LEWIS** landed the airplane at the Yellowstone Regional Airport in Cody, Wyoming, with **WILES** as the front-seat passenger.

10. In November, 2013, after landing the airplane at the Yellowstone Regional Airport, **LEWIS** interacted with staff working for Choice Aviation, a fixed-base operator at the Yellowstone Regional Airport, using the alias "Ken Howard."

11. On or about February 27, 2014, **LEWIS** landed the airplane at the Yellowstone Regional Airport in Cody, Wyoming, with **WILES** as the front-seat passenger.

12. On or about February 27, 2014, after landing the airplane at the Yellowstone Regional Airport, **LEWIS** interacted with Choice Aviation staff using the alias "Ken Howard."

13. On or about February 27, 2014, **LEWIS** checked in at the Holiday Inn in Cody, Wyoming, under the name "Ken Howard" and paid cash for one room.

14. Between on or about February 27 and February 28, 2014, **LEWIS** possessed three purported Idaho driver's licenses and a Colorado driver's license, all in different names.

15. On or about February 28, 2014, **LEWIS** and **WILES** possessed approximately $259,717 in United States currency.

All in violation of 18 U.S.C. § 371.

## COUNT TWO

On or about February 27, 2014, in the District of Wyoming, the Defendants, **SCOTT MICHAEL LEWIS** and **GILBERT WAYNE WILES, JR.**, did knowingly and willfully operate an aircraft eligible for registration under 49 U.S.C. § 44102, namely, a Cessna 206 airplane bearing tail number N6214V, while not using said aircraft to provide "air transportation" as defined by 49

U.S.C. § 40102(a)(5), and while knowing said aircraft was not registered under 49 U.S.C. § 44103, and the Defendants did knowingly aid and abet each other in the commission of said offense.

In violation of 49 U.S.C. § 46306(b)(6)(A), 18 U.S.C. § 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

## FORFEITURE NOTICE

1. The allegations contained in Counts One and Two of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 49, United States Code, Section 46306(d).

2. Pursuant to Title 49, United States Code, Section 46306(d), the Defendants shall forfeit to the United States any aircraft whose use is related to, or to aid or facilitate, a violation of § 46306(b). The property subject to forfeiture includes the Cessna 206 airplane bearing tail number N6214V that landed in Cody, Wyoming on or about February 27, 2014.

A TRUE BILL:

*/s/ Ink Signature on File in Clerk's Office*
FOREPERSON

_____
CHRISTOPHER A. CROFTS
United States Attorney

## PENALTY SUMMARY

| | |
|---|---|
| **DEFENDANT NAME:** | SCOTT MICHAEL LEWIS<br>GILBERT WAYNE WILES, JR. |
| **DATE:** | January 12, 2016 |
| **INTERPRETER NEEDED:** | No |
| **PLACE OF TRIAL:** | The government, pursuant to Rule 18, F.R.Cr.P., with due regard for the convenience of the Defendant, any victim and witnesses, and the prompt administration of justice, requests trial be held in:<br><br>**No Preference** |
| **VICTIM(S):** | No |
| **OFFENSE/PENALTIES:** Ct 1 | 18 U.S.C. § 371, 49 U.S.C. § 46306(b)(6)(A)<br>(Conspiracy to Operate an Unregistered Aircraft)<br><br>0-5 Years Imprisonment<br>Up to $250,000 Fine<br>Up to 3 Years Supervised Release<br>$100 Special Assessment<br>Class "D" Felony |
| Ct 2 | **49 U.S.C. § 46306(b)(6)(A) and 18 U.S.C. § 2**<br>(Operating an Unregistered Aircraft and Aiding and Abetting)<br><br>0-3 Years Imprisonment<br>Up to $250,000 Fine<br>Up to 1 Year Supervised Release<br>$100 Special Assessment<br>Class "E" Felony |
| **TOTALS:** | 0-8 Years Imprisonment<br>Up to $500,000 Fine<br>Up to 3 Years Supervised Release<br>$200 Special Assessments |
| **AGENT:** | Joe O'Haver, DOT / OIG |

| | |
|---|---|
| **AUSA:** | Thomas Szott, Assistant United States Attorney |
| **ESTIMATED TIME OF TRIAL:** | 1 to 5 days |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | Yes |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | No |