IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | No. 16CR19 |
| ) | |
| GILBERT WILES, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT GILBERT WILES' MOTION FOR AND MEMORANDUM IN SUPPORT OF HIS MOTION FOR SEVERANCE

The Defendant, Gilbert Wiles, hereby informs the Court concerning the basis and necessity for the severance of his trial from that of his co-defendant pursuant to Federal Rule of Criminal Procedure 14.

**Defendant Wiles' severance motion is not of trivial consequence; it is significant because severance is the only way Mr. Wiles can receive a fair trial.**

ZAFIRO

The United States Supreme Court most recently addressed the severance issue in Zafiro v. United States 113 U.S. 933 [122 L.Ed 2d 317] (1993). In that case, the Supreme Court held that a district court should grant a severance where there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Zafiro, 122 L.Ed 2d at 325. The Supreme Court recognized that the risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed [in Zafiro]. Id. The

1

Supreme Court specifically described examples of situations which might demonstrate the risk that a defendant would be deprived of one of his trial rights or that the jury might be prevented from making a reliable judgment about guilt or innocence, and which would, therefore, warrant separate trials. In a joint trial, Mr. Wiles would be subjected to these risks of prejudice specifically recognized by the Supreme Court in Zafiro.

    A. Mr. Wiles will be denied access to co-defendant exculpatory testimony.

Mr. Wiles' co-defendants may offer exculpatory testimony for him at a separate trial, but will likely assert his Fifth Amendment right to remain silent if defendants are tried together. Upon filing of an affidavit to this effect, Mr. Wiles is entitled to severance of his case from that of his co-defendant. United States v. Vigil, 561 F.2d 1316 (9th Cir. 1977); United States v. Echeles, 352 F.2d 892 (7th Cir. 1965). Mr. Wiles reserves the right to provide the Court with an affidavit which satisfies the requirements of Vigil, and thus supports the granting of a severance.

If the Court grants Mr. Wiles' motion to sever, he requests that his trial be continued until after that of the other co-defendant. If the co-defendant's trial is to proceed after Mr. Wiles, he would likely assert his Fifth Amendment right to remain silent at the first trial. The Ninth Circuit has recently re-emphasized that it may "be[ing] an abuse of discretion for the district court to grant severance expressly to enable a co-defendant witness to offer exculpatory testimony and then to deny the continuance which would have deterred the witness from invoking the Fifth Amendment." United States v. Tham, 948 F.2d 1107 (9th Cir. 1991), superseded, 960 F.2d 1391 (9th Cir. 1992); United States v. Gay, 567 F.2d 916, 921, n.8 (9th Cir. 1978). Accordingly, Mr. Wiles requests that he be tried after his co-

defendant.

Even if a co-defendant would not voluntarily testify at his separate trial, Mr. Wiles has a constitutional right to call him as a witness. If a co-defendant is called as a witness and refuses to answer questions based on Fifth Amendment privilege, Mr. Wiles can seek to compel that testimony by requesting immunity as to statements made in court. At that time, Mr. Wiles could seek an order requiring the government to grant use immunity to the co-defendant's testimony under 18 U.S.C. § 6003(b)(1). Such use of this statute is compelled by the Sixth Amendment's guarantee of compulsory process and by the Fifth Amendment's due process considerations of fairness. See United States v. Leonard, 494 F.2d 955, 985 n.79 (D.C. Cir. 1974) (concurring and dissenting opinion of J. Bazelon).

If statutory immunity is not appropriate, the Court can confer immunity independent of the prosecutor's statutory power because Mr. Wiles would be "prevented from presenting exculpatory evidence which is crucial to [his] case." Government of the Virgin Islands v. Smith, 615 F.2d 964, 969-70 (3d Cir. 1980); see United States v. Alessio, 528 F.2d 1029 (9th Cir. 1976). Mr. Wiles' rights to compulsory process and to due process of law entitle him to a separate trial if the co-defendant refuses to testify at a joint trial.

B. Guilt by Association/ Differing Culpability

The Supreme Court recognized that such a risk might occur when defendants have markedly different degrees of culpability. That is true in this case. Mr. Wiles was only a passenger in this plane; it was the co-defendant who was operating the plane and evidence against the co-defendant would be prejudicial against Mr. Wiles. Judicial economy suggests that Mr. Wiles should not have to sit through a trial in which most of the evidence does not

3

involve him.

Under these circumstances, the Supreme Court has recognized a heightened risk of prejudice due to markedly different degrees of culpability, which may warrant severance and should in this case. Zafiro at 938. It is extraordinarily difficult for a jury to follow admonishing instructions and to keep separate evidence that is relevant only to co-defendants.

> A co-defendant in a conspiracy trial occupies an uneasy seat. There generally will be evidence of wrongdoing by somebody. It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together.

Krulewitch v. United States, 336 U.S. 440, 454 (1949).

C. <u>Mr. Wiles and his co-defendant will likely employ antagonistic defenses.</u>

Severance is appropriate where "the defenses 'are antagonistic to the point of being mutually exclusive'". United States v. Ramirez, 710 F.2d 535, 546 (9th Cir. 1983) (quoting United States v. Marable, 574 F.2d 224, 231 (5th Cir. 1978). In order "[t]o justify a severance on the ground of antagonistic defenses, there must be a showing of 'mutual exclusivity' -- [one defendant's] acquittal had to preclude [the other's]." United States v. Polizzi, 801 F.2d 1543, 1554 (9th Cir. 1986) (citations omitted).

In United States v. Tootick, 952 F.2d 1078 (9th Cir. 1991) the Ninth Circuit reversed the defendants' convictions due to the district court's failure to sever the two defendants. In Tootick, defendants Tootick and Frank were jointly tried on charges of assault resulting in serious bodily injury. Each defendant contended that the other was solely responsible for the crime, a stabbing. Although only defendant Frank testified, both

defendant Frank and defendant Tootick advanced their theories through the arguments of counsel, and their respective examinations.

In Tootick, the defendants' mutually exclusive defenses had "the effect" of [bringing] a second prosecutor into the case with respect to their co-defendant." Id. at 1082. By acting as a "second prosecutor" as to each co-defendant, the defendants' attorneys conferred a tremendous advantage upon the prosecution.

> The government's case becomes the only unified and consistent presentation. It presents the jury with a way to resolve the logical contradiction inherent in the defendants' positions. While the defendants' claims contradict each other, each claim individually acts to reinforce the government's case. The government is further benefitted by the additive and profound effects of repetition. Each important point the government makes about a given defendant is echoed and reinforced by the co-defendant's counsel.

Id. Because the defendants' trial under these convictions resulted in "manifest prejudice", the Ninth Circuit reversed each defendant's conviction. Id. at 1083.

Here, there is a high likelihood of antagonistic defenses. In addition, Mr. Wiles will have a strong incentive to attempt to produce any prior bad acts of his co-defendant. See United States v. Sherlock, 865 F.2d 1069 (9th Cir.), amended and superseded, 962 F.2d 1349 (9th Cir. 1989) (reversing conviction for failure to sever where defendant precluded from impeaching co-defendant's out of court statements with co-defendant's prior conviction). If any such convictions exist, and if the government seeks to introduce purported co-conspirator statements, Mr. Wiles would also attempt to introduce these prior convictions to impeach the purported co-conspirator. See Id.

D.     Confrontation Regarding Co-defendants' Statements

The Supreme Court, in <u>Bruton</u>, 391 U.S. 123 (1968) recognized that the risk of compromising a defendant's trial right might occur when evidence that is probative of a defendant's guilt, but technically admissible only against a co-defendant is introduced at a joint

Given the opportunity to call his co-defendant at trial, Mr. Wiles believes that if his co-defendant were to testify truthfully, he would fail to inculpate him. However, the co-defendant has the right not to testify; neither the government nor Mr. Wiles can compel him to do so. Instead, in a joint trial the government would inevitably use the unexplored and misleading hearsay statements of the co-defendant, while at the same time depriving Mr. Wiles and his counsel of the right to confront and cross-examine the co-defendant with respect to his statements.

This situation is impermissible. The problem was clearly recognized in <u>Bruton</u>, which prohibited entirely the introduction of co-defendants' confessional statements in a trial against a co-defendant. This blanket prohibition to protect the accused's Sixth Amendment right to confront the witnesses against him has deep and abiding historical roots. See <u>Logan v. United States</u>, 144 U.S. 263 (1892) and <u>Brown v. United States</u>, 150 U.S. 93 (1893). The United States Supreme Court modified the <u>Bruton</u> blanket prohibition against the introduction of all co-defendant confessional statements in <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987). In <u>Richardson</u> at 211, the Supreme Court affirmed the conviction where there was total and complete redaction of all co-defendant hearsay statements, which make reference to the Defendant <u>or his existence</u>. (The Supreme Court did not decide whether a reference to the Defendant's existence by the use of a symbol would be a sufficient redaction.

6

Id fn. 5) In <u>Cruz v. New York</u>, 481 U.S. 186 (1987), a case which was decided by the Supreme Court together with <u>Richardson</u>, the Supreme Court adhered to <u>Bruton</u> and reversed Cruz's conviction because the trial court failed to redact the co-defendant's statements so that they made no reference to Cruz or his existence.

Before the United States Supreme Court recognized the sufficiency of such a complete redaction in 1987, the Tenth Circuit Court of Appeals adopted a less stringent redaction requirement in <u>Untied States v. Espinosa</u>, 771 F.2d 1382, 1399 (1985) cert. denied 474 U.S. 1023 (1985). In that case, the Tenth Circuit limited application of the <u>Bruton</u> rule to clearly inculpatory comments that are vitally important to the government's case. After the Supreme Court's decision in <u>Richardson</u>, the Tenth Circuit reverted back to its own less stringent standard. E.g., See <u>United States v. Hill</u> 901 F.2d 880, 884 (1990). This difference in the appellate courts has led to the government's practice in this Court of seeking to have this Court apply the more favorable Tenth Circuit approach, instead of the more strictly drawn redaction deemed sufficient by the Supreme Court in <u>Richardson</u>.

As a matter of practicality, the government's argument will necessarily encompass the clearly inculpatory statements of the co-defendants indicating that they had knowledge and intent to distribute. The government will inevitably argue that Mr. Wiles' mere presence with the co-defendant is enough evidence to convict him as well. This has the impermissible consequence of permitting the government to do by argument and inference what the Supreme Court has ruled the Constitution specifically prohibits. It would be impossible to compartmentalize the argument in this case as is required by the Sixth Amendment to the Constitution as held in <u>Richardson</u>. This risk is particularly acute in this

case because the evidence against Mr. Wiles is little and different from the expected proof against his co-defendant as discussed above. A joint trial will unavoidably subject Mr. Wiles to the evidence and argument admissible against his co-defendant in this case. The only way to protect Mr. Wiles' right to a fair trial, using only that evidence against him which may constitutionally be so used, is to grant him a separate trial.

Zafiro Summary

The Zafiro factors presented herein risk compromising specific trial rights of Mr. Wiles. Each Zafiro factor presented herein also risks preventing the jury from making a reliable judgment about his guilt or innocence. When taken together, there is no way that Mr. Wiles can obtain a fair trial where his guilt or innocence is determined on the basis of evidence admissible only against him, without a severance from the trial of his co-defendant.

CONCLUSION

While joint trials are generally favored for the convenience of the courts, this case must be severed because of the circumstances recognized by the United States Supreme Court as warranting severance. Severance is the only way for Mr. Wiles to get a fair trial.

WHEREFORE Mr. Wiles requests the Court to grant him a trial separate from that of his co-defendants.

DATED this 23 day of March, 2016.

    s/Dion J. Custis
    Dion J. Custis
    400 East 20th Street
    Cheyenne, WY 82001
    (307) 638-2442

## **CERTIFICATE OF SERVICE**

This Motion to Sever Co-Defendants was served on all parties electronically.

s/Dion J. Custis<br>
Dion J. Custis