## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**SCOTT LEWIS,**<br><br>**Defendant.** | Case No. 16CR19 |

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND/OR QUASH SEARCH WARRANT

COMES NOW Defendant, Scott Lewis, by and through counsel, Joe D. Bustos, and hereby moves this honorable Court to suppress any and all evidence obtained as a result of the illegal searches of his hotel room and airplane. Grounds for this Motion are as follows.

### FACTS

This recital of the facts is taken from the search warrant affidavits. Defendant does not accept these facts as true, but applicable law requires the court to look to the affidavit when assessing whether a search warrant should be quashed, so Defendant presents the facts as they were presented in the affidavits.

On or about February 27, 2014, Claimant Scott Lewis, along with a passenger, flew a plane into Yellowstone Regional Airport in or near Cody, Wyoming. An employee of Choice Aviation contacted local law enforcement to report that the plane was "suspicious." Detective Ronald Parduba of the Cody Police Department then contacted the employee, who indicated that the plane had flown into the airport a few months earlier (in November 2013) and that the employee had found it vaguely suspicious at that time. The employee stated that whoever flew the plane in November had requested to stay the night at the facility but this was not permitted,

so the pilot flew out in "increment" weather after paying for services with $100 bills, and that the plane's windows had been covered with shades while at the facility.

On February 27, 2014, the plane, as noted, arrived a second time at the airport and whoever was piloting this time "did not report on the radio", put the shades up on the side windows while taxiing, and put the shades on the front windshield once stopped. However, the employee admitted to Detective Parduba that reporting on the radio was not required but was only done as a courtesy. The employee stated that there had been two males in the plane who had booked a room at the local Holiday Inn because weather conditions did not allow them to proceed with their travel. The employee stated that the plane was old and was designed for moving cargo, and appeared to have an aftermarket modification, a hatch on its underside, so that was suspicious and warranted contacting the police. The employee indicated that the plane was in their hangar.

Detective Parduba then contacted a police officer with a drug detection dog, and the dog was eventually taken to the plane and "alerted to the odor of narcotics coming from the plane" on both the left and right sides of the plane.

Detective Parduba spoke with another Choice Aviation employee, who indicated that the two males had bags with them, and one of them "looked heavy". Detective Parduba then went to the Holiday Inn, where he spoke with the manager, who confirmed that two males had been picked up via shuttle from Choice Aviation and checked in to the hotel.

Later, a different police officer contacted the hotel manager again. The manager said she talked to the driver of the shuttle bus, who told her that the males declined help for one of the bags but allowed the driver to help with the other two bags. The manager indicated that the males' room was paid for with cash, that they went "immediately to their room with their bags

and have not left", that they put a "do not disturb" sign up, and that they requested room service to deliver an HDMI cable. The manager stated that when the cable was delivered to the room, one of the males opened the door "just enough to slide the cable through and then tipped the employee."

Detective Parduba learned from the original Choice Aviation employee that the males "intended to fly out of Cody at approximately 0700 hours, Friday February 28, 2014", and then, by expressing his belief that the two males were generally involved with illegal drug trafficking, Parduba applied for and obtained a warrant for the search of the plane and the males' hotel room.

Detective Parduba's investigative report indicates that on February 28, 2014 at 10:00 a.m., law enforcement located one of the males (who turned out to be Defendant) in the Holiday Inn restaurant. Defendant refused to answer questions, asked for an attorney, and was detained. Law enforcement executed the warrant for the hotel room at 10:15 a.m., finding and seizing, among other things, cell phones, drivers licenses, and $259,717 in cash. At 10:30 a.m., law enforcement executed the search warrant for the plane, failing to find any drugs or anything else illegal, nullifying the credibility of the earlier alleged dog alert. Nevertheless, officers seized the plane. Defendant was then charged in this case.

The case was "adopted" by United States Customs and Border Protection later that day. On or about May 4, 2014, Defendant filed administrative claims with that agency, claiming ownership of the currency and airplane.

## ARGUMENT

### I.    The drug-sniffing dog was not reliable.

While a drug dog's alert can weigh for a finding of probable cause in theory, the dog must be reliable as demonstrated through his or her training and field performance records.

A defendant [ ] must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses. The defendant, for example, may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty. So too, the defendant may examine how the dog (or handler) performed in the assessments made in those settings. Indeed, evidence of the dog's (or handler's) history in the field, although susceptible to the kind of misinterpretation we have discussed, may sometimes be relevant, as the Solicitor General acknowledged at oral argument. See Tr. of Oral Arg. 23-24 ("[T]he defendant can ask the handler, if the handler is on the stand, about field performance, and then the court can give that answer whatever weight is appropriate"). And even assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause-- if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions.

In short, a probable-cause hearing focusing on a dog's alert should proceed much like any other. The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence.

*Florida v. Harris*, 133 S. Ct. 1050, 1057-1058 (2013). Defendant hereby challenges the reliability of the drug dog used here, and it remains to be seen whether the dog's records, if there are any, will support that the dog is sufficiently reliable.


## II.    The affidavit does not provide probable cause to justify the search of the hotel room.

"The Fourth Amendment requires that search warrants be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized' [so] warrants must be issued by neutral, disinterested magistrates[,] those seeking the warrant must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a

particular offense[, and] 'warrants must particularly describe the "things to be seized"', as well as the place to be searched.[ ]" *Dalia v. United States*, 441 U.S. 238, 255 (1979).

In determining if a warrant should be quashed, the Court should look to the supporting affidavit's four corners. *See, e.g., U.S. v. Harvey*, 514 F. Supp. 2d 1257, 1259 (D. Kan. 2007) *(citing Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971); *U.S. v. Beck*, 139 Fed. Appx. 950, 954 (10th Cir. 2005) ).

Defendant submits that even assuming the drug dog can be relied upon, there was a clear lack of probable cause to search the hotel room.

A hotel room is a residence for purposes of searches. *U.S. v. Reeves*, 524 F.3d 1161 (10th Cir. 2008). Probable cause to search a person's residence is not established solely with probable cause that the person is guilty of a crime, there "must be additional evidence linking the person's home to the suspected criminal activity." *See, e.g., United States v. Harris*, 735 F.3d 1187, 1191 (10th Cir. 2013) *(citing U.S. v. Rowland*, 145 F.3d 1194 (10th Cir. 1998). Whether "a sufficient nexus has been established between a defendant's suspected criminal activity and his residence . . . necessarily depends upon the facts of each case" [and] "a sufficient nexus is established once 'an affidavit describes circumstances which would warrant a person of reasonable caution' in the belief that 'the articles sought' are at a particular place." *U.S. v. Richard*, 350 Fed. Appx. 252, 258 (10th Cir. 2009) (citing cases).

In a recent case, a District Court in Texas found per the above principles that:

. . . no reasonable agent could rely on the warrant issued in this case because the affidavit in support was 'bare bones' with respect to the nexus between the objects sought and the place to be searched. An agent who relied on the warrant would have to believe that agents, in every single drug-trafficking case, could search a suspect's home merely because they have probable cause to believe that the suspect has engaged in drug trafficking. "If that were so, there would be no reason to distinguish search warrants from arrest warrants" in the large class of drug-trafficking cases. [ ]. That is patently unreasonable. Because the information

before the magistrate judge was so lacking in probable cause that no agent could reasonably rely upon the warrant when conducting a search, it necessarily follows that the warrant did not issue upon probable cause.

*U.S. v. Solorio-Hernandez*, 2015 U.S. Dist. LEXIS 72904, *15 (S.D. Tex. June 5, 2015) (citing

*U.S. v. Broussard*, 80 F.3d 1025, 1034-35 (5th Cir. 1996); *U.S. v. Payne*, 341 F.3d 393, 399 (5th

Cir. 2003)). See also *State v. Doile*, 244 Kan. 493, 769 P.2d 666 (Kan. 1989) ("no facts were

alleged [in the affidavit] indicating any current drug-related activity was occurring at the

residence."); *State v. Ratzlaff*, 255 Kan. 738, 877 P.2d 397, 405 (Kan. 1994); *State v. Silvestri*, 136

N.H. 522, 618 A.2d 821, 824 (N.M. 1992) (affidavit in support of a search warrant for defendant's

residence contained information from an informant regarding his purchase of marijuana from

defendant twice in one week at an undisclosed location but court found no probable cause to

search defendant's residence because "informant [ ] lacked personal knowledge of the presence of

drugs in defendant's residence and did not indicate any other circumstances that would support the

inference"); *State v. Dalton*, 73 Wash. App. 132, 868 P.2d 873, 876 (Wash. App. 1994) (no

information in the affidavit connected defendant's alleged drug trafficking to his home);

*Commonwealth v. Way*, 342 Pa. Super. 341, 492 A.2d 1151, 1154 (Pa. Super. 1985);

*Commonwealth v. Kline*, 234 Pa. Super. 12, 17 (Pa. Super. Ct. 1975).

Another Court recently found similarly, but inversely, that though there was probable cause to search a particular residence, the affidavit failed to provide the probable cause for all vehicles and persons associated with that residence:

> The affidavit states that in the twenty-four hours prior to submitting their petition NPD used a confidential informant "to make two controlled buys for quantities of Heroin from the above location." [ ] The use of the singular "location" here is key because this sentence is the only place the affidavit could be construed to link narcotics trafficking to anything other than the 114 Honeysuckle Court residence. Every other factual assertion is directly tied to the residence alone. [ ] ...only the residence is referenced directly above this statement and it is hardly reasonable to infer that a singular "location" intended to reference four separate areas. Had the affidavit offered that two controlled buys of Heroin

were made "from the above location[s] [in transactions conducted by the persons to be searched]," this affidavit may have provided enough [but] [t]his affidavit "completely neglect[s] to indicate why the affiant believed that" the defendants or the vehicles had any connection with either the residence or the narcotics trafficking described herein.[ ]. Consequently, the affidavit failed to provide the probable cause necessary to satisfy the Fourth Amendment warrant requirement[.]

*U.S. v. Smith*, 2015 U.S. Dist. LEXIS 128878, *6-7 (E.D. Ky. Sept. 25, 2015) (*U.S. v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013)). Notably, *Smith* went on to find that the government could not avoid exclusion through *Leon's* good-faith exception because by looking to *U.S. v. Laughton*, 409 F.3d 744 (6th Cir. 2005).

    In short, the warrant affidavit here was required to provide some facts that would support the inference that drugs or drug related items would be found in Defendant's hotel room. But the affidavit supported the opposite conclusion: a dog alert (if believed) indicated that drugs were in the plane and not in the hotel room. Unlike in other cases where an officer's "professional opinion, based upon extensive experience, that individuals involved in drug activity like Mr. Richard's typically maintain evidence of and/or tools of their illegal activity in their *residence. . . was sufficient to establish a nexus*" (*Richard*, 350 Fed. Appx. 252, 259 (10th Cir. 2009) (emphasis added), the affidavit here contains no such opinion, nor does it contain such an opinion in specific regard to Defendant's hotel room (as opposed to his residence). *Cf. also, e.g., generally, U.S. v. Stearn*, 597 F.3d 540, 559 (3d Cir. 2010) (discussing "Whitner-Hodge inference" - while it has been said that evidence of involvement in the drug trade is likely to be found where the dealers reside, an issuing judge may infer that a suspected drug dealer is storing evidence of his drug crimes in his residence only if three preliminary premises are met: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's activities.).

*Lewis Motion to Suppress Evidence and/or Quash Search Warrant*                                     7

No such facts are alleged here in regards to Defendant's hotel room. In fact, there was absolutely no evidence, beyond pure speculation and threadbare suspicions, before the magistrate linking either Defendant or his hotel room to any illegal activity. The information before the magistrate judge was so lacking in probable cause that no agent could have reasonably relied upon the warrant when conducting the search. It necessarily follows that the warrant did not issue upon probable cause. The warrant must be quashed and the evidence seized from the hotel room suppressed. If any evidence was seized from the plane, it should also be suppressed.

## REQUEST FOR AN EVIDENTIARY HEARING

An evidentiary hearing will likely be necessary to resolve contested issues of fact material to the court's determinations of this motion. Whether an evidentiary hearing is warranted rests within the sound discretion of the district court and may be held even if no facts are in dispute. *U.S. v. Batiste*, 868 F.2d 1089, 1092 (9th Cir. 1989); *U.S. v. Glass*, 128 F.3d 1398, 1408-1409 (10th Cir. 1997) However, an evidentiary hearing on a motion to suppress is required if the court concludes from the moving papers that there are contested issues of fact going to the validity of the search in issue, and when there are contested issues of fact requiring an evidentiary hearing, it is an abuse of discretion for the court to deny such a request. *U.S. v. Dicesare*, 765 F.2d 890, 895 (9th Cir. 1985); *Glass, supra*, 128 F.3d 1398, 1409 (citing *U.S. v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986)). Here, there will be many issues of contested fact, including the drug dog's reliability.

THEREFORE, Defendant moves this honorable Court to suppress any and all evidence obtained as a result of the illegal searches of his hotel room and airplane.

DATED this ~~26~~ day of March, 2016.

> s/Joe D. Bustos_____
> Joe D. Bustos, Bar #6-3581
> Attorney for Defendant
> 400 East 20th St.
> Cheyenne, WY 82001
> (307) 638-4633

## CERTIFICATE OF SERVICE

This Motion was served on all parties electronically.

> s/Joe D. Bustos_____
> Joe D. Bustos