FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 APR 13  PM 1:39

STEPHAN HARRIS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 16-CR-19-ABJ |
| | ) |
| | ) |
| SCOTT MICHAEL LEWIS, and | ) |
| GILBERT WAYNE WILES, JR., | ) |
| | ) |
| Defendants. | ) |

### ORDER ON VARIOUS PRETRIAL MOTIONS

Numerous pretrial motions came before the Court for hearing on April 8, 2016. Defendants Scott Michael Lewis and Gilbert Wayne Wiles, Jr. were present at the hearing; counsel for the parties appeared and presented their arguments with respect to the motions and the Court took defendants' various motions under advisement, giving the parties tentative rulings from the bench at the hearing on most of the motions. Accordingly, the Court finds and orders as follows:

### Background

This criminal prosecution is related to a civil forfeiture action, *United States of America v. One Cessna Airplane Model Number TU-206 and $259,717 U.S. Currency,* Case No. 14-CV-151-J, which has been stayed pending the conclusion of the instant criminal action. The defendants flew the airplane in which they were traveling and landed

1

at the Yellowstone Regional Airport in Cody, Wyoming. Lewis was the pilot on February 27, 2014 when they landed in Cody; Wiles was the front seat passenger, according to the Indictment. Lewis interacted with the fixed base operator ("FBO"), Choice Aviation, using an alias, Ken Howard, and later checked into the Holiday Inn in Cody under the Ken Howard name and paid cash for one room. Lewis at the time had 3 different Idaho driver's licenses and one from Colorado, all with different names. The Indictment alleges that Lewis and Wiles had $259,717 in currency. The Indictment includes two counts. Count 1 charges violations of 18 U.S.C. §371 and 49 U.S.C. § 46306(b)(6)(A) [conspiracy to operate an unregistered aircraft] and Count 2 charges violations of 49 U.S.C. § 46306(b)(6)(A) and 18 U.S.C. § 2 [operating an unregistered aircraft and aiding and abetting].

In the Manner and Means section of the Indictment, the government charges that it was part of the conspiracy that an entity called Morris Point, LLC ("Morris Point") was organized under New Mexico law. With Lewis present, Wiles purchased the 1968 Cessna, Model TU-206 (Super Skywagon) for approximately $130,000 cash. Wiles, knowing that the plane's bill of sale had to be filed with the FAA, instructed the seller of the plane to make the bill of sale out to Morris Point. Neither Lewis nor Wiles submitted an Aircraft Registration Application to the FAA after Wiles purchased the plane, despite knowing that they could not lawfully operate the plane without submitting the application to the FAA as required by Title 29 of the United States Code and Title 14 of the Code of Federal Regulations. Although he knew the plane was not registered, as part of the conspiracy

2

alleged, Lewis would fly between various airports accompanied by Wiles, who also knew the plane not to be registered and could take over piloting the plane if necessary. Wiles and Lewis used aliases and false identifications when interacting with the fixed base operators, obtaining fuel, maintenance and other services for the plane. Lewis and Wiles used cash or money orders to pay for fuel, maintenance and other services for the plane. When obtaining maintenance and other services, Wiles would falsely claim that he and Lewis worked for an aerial photography business. Lewis would fly the plane under visual flight rules ("VFR") which permitted him to fly between uncontrolled airports in the U.S. without filing a flight plan. Lewis and Wiles would not announce the plane's tail number over the radio and did not contact airports by radio before landing the plane. The Indictment goes on to allege a number of overt acts in furtherance of the conspiracy and to accomplish the objectives of the conspiracy. Not all overt acts alleged in the Indictment are set forth here.

Among those overt acts, the Indictment recites that in April of 2013 the defendants met with the plane's seller in a hotel room in Austin, Texas, where Wiles purchased the plane for $130,000 cash. In June of 2013, Lewis and Wiles brought the plane to Straight Flight, Inc. at Centennial Airport in Englewood, Colorado for service. Using the alias Karl Stassney, Wiles paid Straight Flight $620 in cash and $1700 in four money orders for work performed by Straight Flight on the plane. In October of 2013, Wiles paid approximately $2200 cash to Vector Air in Erie, Colorado to purchase a Short Takeoff and Landing kit. They then took the kit to have it installed on the plane by Straight Flight, also in October

3

2013. For this work, Wiles, using an alias, paid Straight Flight $12,332.15 in cash and money orders.

In November 2013, Lewis landed at the airport in Cody, Wyoming; Wiles was the front seat passenger. After landing, Lewis is said to have interacted with Choice Aviation, the FBO at the Cody airport, using an alias, Ken Howard.   February 27, 2014, Lewis landed at the same Yellowstone Regional Airport in Cody, Wyoming; Wiles was the front seat passenger. Lewis interacted with the Choice Aviation staff, again using the Ken Howard alias. Later that same day, Lewis checked into the Holiday Inn in Cody, Wyoming, using the Ken Howard name, and paying cash for one room. On February 27 and 28, 2014, the time alleged in the Indictment, Lewis possessed three false Idaho driver's licenses and a Colorado driver's license, all in different names. On February 28, Lewis and Wiles possessed $259,717 in currency, as alleged in the Indictment. Count Two of the Indictment alleges that the defendants knowingly aided and abetted each other in commission of the offense, knowingly and willfully operating an aircraft eligible for registration under 49 U.S.C. § 44102, while not using the aircraft to provide air transportation as defined by 49 U.S.C. § 40102(a)(5), and while knowing the aircraft was not registered under 49 U.S.C. § 44103, in violation of 49 U.S.C. § 46306(b)(6)(A), 18 U.S.C. § 2. Both defendants have denied they were owner of the plane and that either was operating the plane at the pertinent time.

Because the pilot did not announce the plane's tail number on the radio and did not contact the airport before landing, an employee of the FBO, Choice Aviation, became

suspicious and reported those concerns to law enforcement authorities. Detective Parduba of the Cody police spoke with that employee who told Parduba that the same plane had flown into the airport a few months earlier in November of 2013 and that he had thought it to be suspicious even then. The employee told Parduba that in November of 2013 whoever flew the plane had asked to stay that night at the facility and was told by an employee that this was not permitted. Thus, the plane departed in bad weather, with services paid for using $100 bills. The plane's windows had been covered with shades while at the facility. On February 27, 2014 the plane arrived, shades on the side windows were drawn while taxiing and then front window shades were put in place after the plane had landed and stopped. The employee said that the two males on the plane had booked a room at the Holiday Inn because the weather conditions prevented travel. The employee told Parduba the plane was old, designed for moving cargo and looked as if it had an aftermarket modification, causing him to harbor the suspicions he thought were sufficient to report to the police and let them know the plane was in the hangar.

Detective Parduba summoned a K-9 drug dog to the hangar for a drug sniff of the plane. The drug dog, Zeke, was brought by his handler, Officer McClain, to conduct the drug dog sniff of the plane in the hangar. Officer McClain testified at the April 8, 2016 hearing and described the manner in which he conducted and directed the dog's drug sniff of the plane. The drug dog alerted to drugs on both the left and right sides of the plane. Parduba then talked with another Choice Aviation employee who said the men had taken bags from plane with them and that one of the bags looked heavy. Parduba went to the

5

Holiday Inn, spoke with the manager there, and confirmed the men had been picked up by the hotel shuttle and had checked into the hotel.

A different police officer contacted the hotel manager again. The manager said she had talked to the driver of the shuttle bus, who had told her the men declined help with one of the bags, but accepted help from the driver with the other two pieces of luggage. The room had been paid for in cash. The men went immediately to their room with the bags and the manager said they had not left, that they had placed a do not disturb sign on the door, and that they had also asked for room service to deliver an HDMI cable. When the cable was delivered to the room, the door was opened "just enough to slide the cable through and then tipped the employee."

Parduba learned from the first Choice Aviation employee that the men intended to fly out of Cody at approximately 0700 hours, Friday February 28, 2014. That employee thought the men were generally involved with illegal drug trafficking. Parduba applied for and obtained warrants for the search of the plane and the hotel room. The search warrants were executed after they were issued on February 28, 2014.

Parduba's report indicates that February 28, 2014 at 10:00 a.m., law enforcement found one of the men (Lewis) in the restaurant at the hotel. He refused to answer questions, asked for an attorney, and was detained. The warrant for the hotel room was executed at 10:15 a.m.; cell phones, false driver's licenses, and $259,717 in cash, among other things, were found and seized. The warrant for the plane was executed at 10:30 a.m.; no drugs or anything illegal was found in the search of the plane on the morning of

6

February 28, 2014.

Several motions were considered at the hearing.  The motions addressed several topics, including:

- Government's motion to continue (including another oral motion to continue made at the end of the April 8, 2016 hearing by counsel for the government)(Doc. 48) [to be addressed by the Court with separate order]

- Motions by each defendant seeking severance (Wiles: Doc. 37); (Lewis: Doc. 40)

- Motion to suppress of evidence/quash warrant filed by defendant Lewis (Doc. 42), joined by defendant Wiles (Doc. 45)

- Motions to dismiss for "insubstantial evidence," as insufficient to support the charges alleged in the Indictment (Lewis: Doc. 41); (Wiles: Doc. 38)

- Motions to determine sentencing guidelines (Lewis: Doc. 44); (Wiles: Doc. 39)

- Motion in Limine re 404(b) evidence (Lewis: Doc. 43; joined by defendant Wiles, Doc. 45)

The motions are discussed below.


**1. Lewis and Wiles  Motions to Sever**

Lewis asserts that his trial should be severed from that of Wiles because that is the only way he can get a fair trial.  If tried with the co-defendant, he will be denied access to

his co-defendant's exculpatory testimony, who would likely assert his Fifth Amendment rights. Lewis would be subjected to risks of prejudice and deprived of his constitutional rights. The motion for severance filed by defendant Wiles is not substantially different and the Court's disposition applies equally to his motion.

Federal Rules of Criminal Procedure, Rules 8 and 14, address this issue. Rule 8, Joinder of Offenses or Defendants, provides:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

> Rule 14. Relief from Prejudicial Joinder
> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.
> (b) Defendant's Statements. Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence.

Lewis (and the government in its response also) cites *Zafiro v. United States*, 113 S.Ct. 933 (10th Cir. 1993) in support of the arguments in favor of severance. *Zafiro* recognizes that there is a preference in the federal system for defendants indicted together to be tried together. This promotes efficiency and avoids inconsistent verdicts. However, joinder may sometimes prejudice a defendant or the government. The Supreme Court has

not established a bright-line rule requiring severance whenever codefendants have conflicting defenses. Justice O'Connor stated:

> Mutually antagonistic defenses are not prejudicial per se. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. See, e.g., *United States v. Lane*, 474 U.S. 438, 449, n. 12, 106 S.Ct. 725, 732, n. 12, 88 L.Ed.2d 814 (1986); *Opper*, supra, 348 U.S., at 95, 75 S.Ct., at 165.
>
> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See *Kotteakos v. United States*, 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. See, e.g., *Tifford v. Wainwright*, 588 F.2d 954 (CA5 1979) (per curiam). The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh*, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. See 481 U.S., at 211, 107 S.Ct., at 1709.

*Zafiro v. United States*, 113 S.Ct. at 938.

Lewis argues that he may be denied access to his co-defendant's exculpatory testimony at a separate trial, and that his co-defendant might exercise his Fifth Amendment right.   Lewis cites, and relies upon *United States v. Vigil*, 561 F.2d 1316 (9th Cir. 1977), which stated:

> A motion to sever is addressed to the trial court's discretion, and a defendant has a heavy burden in showing that the trial court abused its discretion. *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976); *United States v. Camacho*, 528 F.2d 464, 470 (9th Cir.), cert. denied, 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976); *United States v. Campanale*, 518 F.2d 352, 359 (9th Cir. 1975), cert. denied, 423 U.S. 1050, 96 S.Ct. 777, 423 L.Ed.2d 638 (1976); *United States v. Thomas*, 453 F.2d 141 (9th Cir. 1971), cert. denied, 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972).
>
> When the reason for severance is the asserted need for a codefendant's testimony, the defendant must show that he would call the codefendant at a severed trial, that the codefendant would in fact testify, and that the testimony would be favorable to the moving defendant. *United States v. Wood*, 550 F.2d 435 (9th Cir. 1976); *United States v. Coplen*, 541 F.2d 211 (9th Cir. 1976), cert. denied, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 791 (1977); *United States v. Cruz*, 536 F.2d 1264 (9th Cir. 1976); *United States v. Larios-Montes,* 500 F.2d 941 (9th Cir. 1974), cert. denied, 422 U.S. 1057, 95 S.Ct. 2681, 45 L.Ed.2d 709 (1975); *United States v. Ellsworth*, 481 F.2d 864 (9th Cir. 1973), cert. denied, 414 U.S. 1041, 94 S.Ct. 544, 38 L.Ed.2d 332 (1974); *United States v. Bumatay*, 480 F.2d 1012 (9th Cir. 1973).
>
> In an affidavit filed with his motion to sever, Baca's counsel swore that he intended to call Vigil at trial. He also swore that he had learned from Vigil's counsel that Vigil would say, if he testified, that Baca had no interest in the heroin or knowledge of its presence. At the hearing on the motion to sever, Baca's counsel, in the presence of Vigil's counsel, stated that Vigil would be willing to testify at a separate trial but that it would be impossible to compel him to do so at a joint trial.

That case has been cited by the Tenth Circuit in a few cases.   *United States v. Dickey*, 736 F.2d 571 (10th Cir. 1984), upheld a decision to deny severance, noting that

to show the district court abused its discretion, it would have to find that the "joinder caused either actual or threatened deprivation of one's right to a fair trial." "Further, it is obviously not enough to show merely that separate trials might have offered a better chance of acquittal of one or more of the accused." *Dickey*, 736 F.2d at 589. Continuing,

> We must note here that when a trial court considers a motion for severance, it "must weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *United States v. Petersen*, supra at 1331. Although we agree that the interests of judicial economy should not stand in the way of an individual's right to a fair trial, we believe that the trial court thoroughly considered each appellant's motion in finding no real prejudice to his case. Further, the jury was carefully instructed to individually determine the guilt or innocence of each appellant (R., Vol. XXVI at 10). We hold that the trial court properly found no real prejudice in any of the appellants' cases requiring a separate trial on the conspiracy count.

*Id*. at 590.

> First, when the accused's asserted reason for severance is the need for the testimony of a codefendant, he "must show that he would call the codefendant at a severed trial, that the codefendant would in fact testify, and that the testimony would be favorable to the moving defendant." *United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir. 1977). These steps must be met by the moving defendant so as to avoid a finding of prejudice based upon mere speculation. See *Smith v. United States*, 385 F.2d 34, 38 (5th Cir. 1967). In *Vigil*, counsel for the moving defendant filed an affidavit with his motion to sever swearing (1) that he intended to call the codefendant at trial, and (2) that he was informed by the codefendant's counsel that the testimony given would be favorable to the movant. 561 F.2d at 1317. Further, at the hearing on the motion to sever, counsel for the movant related his understanding that the codefendant would be willing to testify at a separate trial, but not at a joint trial. Id. Because counsel for the movant made the requisite showings and because the importance of the codefendant's testimony to the movant's case was obvious, the appellate court reversed the trial court's denial of the motion for severance. *Id*. at 1318.

> In the instant case, Harris's counsel did not meet, nor did he attempt to meet, the prerequisites for severing a defendant from a joint trial on the

above-stated grounds. Hence, there was no real prejudice shown by Harris which allegedly violated his sixth amendment right to confrontation.

Second, Harris's argument that he was deprived of his fifth amendment right against self incrimination is without merit. We will not find prejudice based on mere conjecture. Further, if we were to adopt Harris's argument, joinder would never be permissible when at least two codefendants chose opposite routes in their constitutional right not to testify.

*Id.*

*United States v. Espinosa*, 771 F.2d 1382 (10th Cir. 1985) is the same:

Fed. R. Crim. P. 8(b) provides that several defendants may be indicted and tried jointly "if they are alleged to have participated in the same act or ... transactions constituting an offense or offenses." In such a case, the trial court may in its discretion grant a severance; however, "[s]everance is not granted as a matter of right, but only when the defendant would be prejudiced by a joint trial." *United States v. Long*, 705 F.2d 1259, 1262 (10th Cir. 1983). To establish that a trial court abused its discretion in denying severance, a defendant must show that "actual prejudice" resulted from the decision. *United States v. McClure*, 734 F.2d 484, 487 (10th Cir. 1984); *United States v. Long*, 705 F.2d at 1262-63; United States v. Ready, 574 F.2d 1009, 1015 (10th Cir. 1978). We believe that Foreman did not make a sufficient showing of prejudice to support any of his contentions, and therefore conclude that the trial court did not abuse its discretion in denying severance.

To establish his first claim-that severance was required to obtain co-defendants' exculpatory testimony-Foreman had to " 'show that he would call the co-defendant at a severed trial, that the co-defendant would in fact testify, and that the testimony would be favorable to [him].' " (Emphasis added). *United States v. Dickey*, 736 F.2d 571, 590 (10th Cir. 1984) (quoting *United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir. 1977)), cert. denied, --- U.S. ----, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). Under the second requirement of this test, more than a bald assertion that a co-defendant will testify at a separate trial is required; " '[t]he unsupported possibility that such testimony might be forthcoming' " is considered insufficient to show prejudice. *United States v. Hackett,* 638 F.2d 1179, 1187 (9th Cir.1980), (quoting *United States v. Bumatay,* 480 F.2d 1012, 1013 (9th Cir. 1973)), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). A defendant can not establish the willingness of a co-defendant to testify on his

behalf if the co-defendant's offer is "further conditioned on the co-defendant's case being tried first." *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983). Furthermore, under the third requirement, the defendant must show that more than a " 'vague and conclusory' statement ... 'of ... negligible weight or probative value' " would be given to demonstrate a co-defendant's testimony would be "favorable". Id. at 780.

Here Foreman's attorney stated in his affidavit that he was informed by other counsel that two co-defendants had never seen or heard of Foreman before the arrest and would so testify if he were tried after them. I R. 216. Such testimony would be *1409 of doubtful weight or probative value in a conspiracy case such as this where knowledge of the other parties in the conspiracy is not required for conviction. See United States v. Dickey, 736 F.2d at 583. Foreman's attorney also merely asserted that the co-defendants told their lawyer they would testify at a separate trial, conditioning their offer to testify on their case being tried first. Such a conditional offer to testify was "in effect a simple alibi-swapping device.... [T]o grant a severance under such a condition 'would allow co-defendants to employ a motion for severance to obtain benefits they would not have but for their joint indictment.' " *United States v. Parodi*, 703 F.2d at 780 (citing United States v. Frazier, 394 F.2d 258, 261 (4th Cir.), cert. denied, 393 U.S. 984, 89 S.Ct. 457, 21 L.Ed.2d 445 (1968), and United States v. Becker, 585 F.2d 703, 706 (4th Cir.1978), cert. denied, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979)). Therefore, the district court did not abuse its discretion in denying severance on this ground.

Lewis also asks that if his severance motion is granted, his trial be continued until after that of Wiles. Even if Wiles would not voluntarily testify at Lewis's separate trial, Lewis has a constitutional right to call him as a witness. If Wiles refused to testify, Lewis could ask the Court to compel his testimony by requesting immunity as to statements made in court. 18 U.S.C. §6003(b)(1).

Lewis next argues that a risk of prejudice might occur when the two defendants have very different degrees of culpability; there is a risk of guilt by association. Lewis argues that judicial economy dictates that he should not have to sit through a trial where

most of the evidence does not pertain to him. He argues the two defendants will likely employ antagonistic defenses, which may be to the point of being mutually exclusive, where one defendant's acquittal must preclude the other's. Lewis asserts he will have a strong incentive to produce prior bad acts of Wiles and that he would attempt to introduce prior convictions, if there are any, to impeach his co-conspirator defendant.

The next argument is a *Bruton* argument, i.e., that there is a risk of compromising a defendant's confrontation and trial right. This implicates a defendant's Fifth Amendment right to confront and cross examine the co-defendant. The defendant suggests the government's argument will encompass the inculpatory statements of the co-defendants to show that they had knowledge and intent to distribute and will argue that Lewis's mere presence should be enough to convict him as well. This is impermissible. All of these factors, Lewis asserts, risk compromising the trial rights of Lewis, risk preventing the jury from making a reliable judgment about Lewis's guilt or innocence such that it will be impossible for him to have a fair trial on the basis of evidence only admissible against him, in the absence of severance from Wiles.

In response, the government notes the preference for joint trials of defendants indicted together, citing *Zafiro,* the same case cited and relied upon by the two defendants. The government argues that the defendants' arguments that the other may offer exculpatory testimony for him at a separate trial are merely speculative and do not show that the other would in fact testify or what the testimony would be. Responding that the district court could also compel testimony via an immunity order pursuant to 18 U.S.C. §

6003(b)(1), the government cites *United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005), which is to the contrary.  Only the U.S. Attorney with proper approval can request a § 6003 immunity order and courts do not have inherent authority to grant a witness use immunity.

As to the assertion by each defendant that each is less culpable than the other, severance is not required, where limiting instructions may cure risk of prejudice.  The defendants have also claimed that they will likely employ antagonistic defenses, but neither has shown anything that warrants severance.  The government also argues that there are no bad acts that each defendant might try to introduce.  It asserts that, based on present knowledge, neither defendant has a prior felony or other conviction admissible for impeachment purposes under Rule 609.  *Bruton* does not support the defendants either and if the defendants' statements were to be offered by the government, the statements would be redacted and limiting instructions would be offered.  This does not mandate severance. The government's arguments are well taken.

In *United States v. Morgan*, 748 F.3d 1024, 1043 (10th Cir. 2014), the appellate court stated, in a decision upholding the district court's denial of a motion to sever:

> "We review the district court's denial of a motion to sever for an abuse of discretion." *United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007).
>
> Federal Rule of Criminal Procedure 14(a) states: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." The Supreme Court has expressed a "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317

(1993). "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* "Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case." *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir. 1984).

To establish "real prejudice, the defendant must demonstrate that the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials." *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994) (quotations omitted). The requisite showing of prejudice "is not made by a complaint that one defendant is less culpable than another, or by an allegation that a defendant would have a better chance of acquittal in a separate trial, or by a complaint of the 'spill-over' effect of damaging evidence presented against a codefendant." *United States v. Iiland*, 254 F.3d 1264, 1270 (10th Cir. 2001) (citations omitted). "Rather, a defendant must show that he was deprived of his right to a fair trial." *United States v. Zapata*, 546 F.3d 1179, 1191 (10th Cir. 2008).

Mr. Sanford failed to meet his heavy burden both before the district court and now on appeal. Although some elements of the Government's case implicated only the other defendants, Mr. Sanford had the opportunity to point this out to the jury through cross-examination and again during closing argument. The jury was instructed to examine the evidence for each individual defendant, and juries are presumed to follow instructions. See *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000). Mr. Sanford asserts only that the spillover effect of damaging evidence about the other defendants prejudiced him. This assertion is not sufficient to support the requisite showing of prejudice. See *Iiland*, 254 F.3d at 1270.

Further, as to the assertion that there are mutually exclusive defenses, the circuit court stated in *United States v. Jones*, 530 F.3d 1292, 1304 (10th Cir. 2008):

A trial court must apply a three-step inquiry when considering an argument that a defendant will be prejudiced because he and a co-defendant will present defenses that are mutually exclusive. *Pursley*, 474 F.3d at 765. First, the court must determine whether the two defenses are "so antagonistic that they are mutually exclusive." *Id.* (internal quotation marks omitted). Second,

because "mutually antagonistic defenses are not prejudicial per se," the court must consider whether there is "a serious risk that a joint trial would compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933). Third, if a defendant shows that his case satisfies the first two factors, the trial court must "weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Pursley*, 474 F.3d at 765 (alteration and internal quotation marks omitted). We have observed that "[t]o warrant a finding that a district court abused its discretion by not severing a trial, the conflict between the defendants' defenses must be such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Dazey*, 403 F.3d 1147, 1165 (10th Cir. 2005) (emphasis added) (internal quotation marks omitted).

530 F.3d at 1304. See also *United States v. Zapata*, 546 F.3d 1179, 1192 (10th Cir. 2008).

As indicated at the hearing, the Court will exercise its discretion and deny the motions for severance. There has been no showing by either defendant that compels the conclusion that the motions to sever should be granted. The evidence in the case, at least as brought to the Court's attention at this time, is not so intricate or complex as to render the jury unable to segregate the evidence associated with each defendant's individual actions in considering the evidence and making its decisions. The defendants have not carried the burden of showing real prejudice to their cases nor has there been a showing that a joint trial would compromise a specific trial right of any defendant or prevent the jury from making reliable judgments about guilt or innocence. Each defendant will point the finger at the other to argue that the other is the culpable defendant. However, the defendants have offered nothing other than generalized statements that their defenses are mutually antagonistic. Even if they were, such defenses are not necessarily prejudicial. The Court believes that any prejudice that could result to one defendant if evidence of a

17

co-defendant's wrongdoing in some circumstances may be cured by less drastic measures, including limiting instructions.

The defense information they claim to be critical is very problematic.  This case is unlike those cases where affidavits have been filed outlining the nature of the information committing a witness to be called to testify or identify such testimony would likely be. Where the defendants offer nothing specific, their assertions that their rights of confrontation and risks of prejudice are simply speculative.

The defendants' suggestions that this problem might be overcome if the Court granted a testifying defendant use immunity is unfounded.  Any grant of immunity must be authorized by the Attorney General of the United States and is not within the purview of the trial court.

The law as it exists embraces a preference for joint trials.   Interests of judicial economy, convenience and burdens on witnesses, defense attorneys, prosecutors, jurors and the Court which attend the conduct of a criminal trial are significant.  There has been no unconditional showing of the exculpatory basis of purported testimony. Both defendants have asked that the trial of other should be tried first.  No factual basis for severance has been established. There are no specifics offered as to the nature of the claimed mutually antagonistic defenses.  Offerings remain general and speculative.  More is required to support a decision to hold separate trials for each defendant.

The Court is cognizant that defendant Lewis's prior history could be a matter that would be revealed at trial and could, if not considered and addressed with care, has the

potential to tar Wiles with the same brush that will paint Lewis. However, such risk can be obviated through the use of limiting instructions. Nothing offered by the defendants overcomes the preference for joint trial of defendants indicted together. The motions seeking to sever will be denied.

## 2. Motions to dismiss for insufficient evidence

These defense motions ask to have the charges against each defendant dismissed for insufficient evidence. The defendants claim that the factual information outlined in the preceding portions of this Order is insufficient support for the charges brought by the grand jury and which are the subject of this prosecution. The government disagrees.

The motions to dismiss for insufficient evidence are, in substance, charges seeking dismissal of the Indictment pursuant to Fed. R. Crim. P. 12(b)(b)(3)(B)(v), for failure to state an offense. The opinion in *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006), provides:

> "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997). Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). Rather, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id.* See also *United States v. Sampson*, 371 U.S. 75, 78-79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962) (finding it irrelevant that charges had not been established by evidence, because at a motion to dismiss "the indictment must be tested by its sufficiency to charge an offense"). Courts should therefore avoid considering evidence outside the indictment when testing the indictment's legal

sufficiency. *Hall*, 20 F.3d at 1087.

49 U.S.C. § 46306(b)(6)(A) criminalizes knowing and willful violations of certain aircraft registration and requirements, applicable only to aircraft not used to provide air transportation.  The elements required to be proven for a conviction include:

1.  On or about the date in question;
2.  In the applicable judicial district;
3.  The defendant knowingly and willfully operated an aircraft;
4.  The aircraft was not used to provide "air transportation;"
5.  The aircraft was eligible for registration under 49 U.S.C. § 44102; and
6.  The defendant knew the aircraft was not registered under 49 U.S.C. § 44103.

The government asserts that the Indictment is sufficient to state the offenses charged and identify all of these elements.  Ownership is not an element under 49 U.S.C. § 46306(b)(6)(A), even the defendants have each asserted a lack of ownership or purchase of the plane. The defendants have also argued, among other things, that neither defendant, while not the owner or pilot of the plane, had any reason to know the plane was not duly registered. With these motions fact issues are raised.  The government must carry its burden of proof beyond a reasonable doubt as to each element of the offenses charged.

A § 361 conspiracy offense requires proof of (1) an agreement to violate the law; (2) the defendant knew the essential objective of the conspiracy; (3) the defendant knowingly and voluntarily participated in the conspiracy; (4) an overt act was committed in furtherance of the conspiracy; and (5) the coooconspirators were independent. *United States v. Bedford*, 536 F.3d 1148, 11546 (10th Cir. 2008).

At the April 8 hearing, counsel for defendant Wiles argued that the Court should

20

step in at the outset of this case and find that the case should not proceed and should

further find that the defendants should not be federally prosecuted in this criminal action.

Counsel even suggested the conduct alleged in the Indictment is not criminal conduct.

This argument is without merit. Upon the review, and not meaningfully challenged by

anyone now before this Court, the Court finds the Indictment alleges criminal conduct. The

pertinent statutes prohibit certain conduct and are specific in setting forth a standard of

proof that requires knowing and willful conduct by the defendants. The statute provides

specific criminal punishment that may be imposed by the Court at sentencing after a

finding of guilt by the jury at trial. Without further comment, the Court declines to adopt the

defendants' arguments. The defendants' pleas of not guilty impose the burden on the

government to prove, beyond a reasonable doubt, all elements of each of the charges

against each defendant. If it fails to do so, the jury must find the defendants not guilty. This

Indictment gives the defendants fair notice of the charges against them and enables them

to assert double jeopardy offenses. The motions to dismiss will be denied.


**3. Lewis Motion to Suppress, joined by Wiles**

The motion to suppress argues that the facts asserted in the affidavit and included

with the application for the search warrants of the plane and the hotel are insufficient. The

warrant for the plane was executed at 10:00 a.m. on February 28, 2014; the hotel room

warrant was executed at 10:15 a.m. that same day. When the warrant was executed that

morning for the airplane, no drugs or other illegal items were discovered. This, defendants

assert, nullifies the credibility of the K-9 drug dog alert inside the plane the previous day.

The defendants have argued the drug dog was not reliable, without offering any evidence to support this contention. Although an alert can aid and weigh in favor of a probable cause finding to support issuance of a search warrant, to do so, the drug dog must be demonstrated as reliable through training and field performance records. The defendants also contend the affidavit did not provide probable cause to justify a search of the hotel room, in that it did not demonstrate probable cause to believe the evidence sought will aid in a particular apprehension or conviction for an offense. Assuming that the drug dog's alert could be relied upon in making the decision to issue a warrant, there still was not probable cause to search the hotel room.

Defendants explain that a hotel room is a residence for purposes of search; to establish probable cause for search of a residence there must be additional evidence linking the residence to the suspected criminal activity. In defendants' view, none of the facts in the warrant indicate that any drug-related activity was occurring or warrant any inference that drugs or drug related items would be found in the defendants' hotel room. The defendants argue the affidavit supports the opposite conclusion: a drug dog's alert (if believed) indicated the drugs were in the plane and not in the hotel room.

Defendants assert that evidence of involvement in the drug trade may be inferred by the neutral magistrate asked to issue a search warrant only if (1) the person suspected of drug dealing is actually a drug dealer, (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the

dealer's activities, citing *United States v. Stearn*, 597 F.3d 540, 559 (3d Cir. 2010).   No

such facts are alleged with respect to the hotel room and there was no evidence, beyond

speculation and suspicion that the defendants or hotel room were linked to any illegal

activity.  The information was so lacking in probable cause that no neutral magistrate could

reasonably rely on the warrant in conducting th search.  The warrant should be quashed

and the evidence seized from the hotel room should be suppressed, as well as any

evidence seized from the plane (if any).

The government disagrees with the defendants' arguments as to the reliability of the

drug dog and, assuming the dog was reliable, contends the warrant for the hotel room was

sufficient to show probable cause for the search.  In support, government has included

copies of the search warrant, affidavit and return for the airplane (Ex. 1), search warrant,

affidavit, and return for the hotel room (Ex. 2), and the drug dog's 1/2014 certification (Ex.

3).  Officer McClain, the handler of the K-9 drug dog testified at the hearing.  Even without

consideration of the drug dog's alert in the plane, the search warrants are sufficient to

establish probable cause.

The government asserts the defendants must both establish standing to challenge

the airplane search, i.e., whether their own Fourth Amendment interests were implicated

by the governmental action.  This would require them to show lawful possession of the

plane giving rise to a legitimate expectation of privacy, citing *United States v. Erickson*, 732

F.2d 788, 790 (10th Cir. 1984).  This requires consideration of three non-determinative

factors (1) whether the defendant asserted ownership over the items seized from the

plane; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing of a legitimate possessory interest in the plane. Neither defendant has a legitimate possessory interest in or lawful control over the plane; neither owned nor purchased the plane and each defendant has claimed he was not the pilot. The government asserts that if the defendants do testify at the hearing and satisfy these standing requirements by showing the nature of the relationship with Morris Point or ownership of the items seized from the plane, they would have standing. The defendants did not testify at the hearing and the focus of the suppression motion was directed primarily to the reliability of the drug dog in contributing to a finding of probable cause sufficient to support the search warrants.

For purposes of this motion, the Court accepts without deciding that the defendants have standing. The Court further finds that the motion to suppress must be denied. The warrant affidavits provide a substantial basis to believe evidence of drug trafficking was located in the plane and hotel room. The neutral magistrate, when required to determine whether probable cause exists to support a warrant, must make practical, common-sense decisions. The neutral magistrate must determine whether, given the circumstances described in the affidavit before him and considering the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004). This decision is entitled to deference and the reviewing court looks to the totality of the circumstances presented in the affidavit when considering

whether there was a substantial basis for determining that probable cause existed.

Here, the government asserts that even without the dog alert, probable cause existed to believe evidence of drug trafficking would be found.  The government identifies as supporting facts (1) the defendants were operating an unregistered airplane with a suspended certificate that was capable of carrying heavy loads; (2) the defendants tried to conceal their identities and travels; (3) Lewis's use of fictitious names, including Ken Howard, which could not be linked to any pilot's license; (4) attempting to conceal the interior of the plane; (5) taking an unusual amount of luggage from the plane to the hotel room, including the duffle bag described as heavy and which the shuttle driver was not permitted to handle; (4) the defendants did not want to open the hotel room door any more than necessary; and (7) the same plane had previously been flown out of the same airport in bad weather when the pilot was told he would not be permitted to sleep in the facility and stay with the plane overnight.  Combined with Detective Parduba's description of behavior of drug traffickers and the suspicions of others who had interacted with the defendants, there was a sufficient and substantial basis for believing evidence of drug trafficking would be found.  The drug dog's alert added strength to the belief that probable cause existed for issuance of the warrants.  *United States v. Ludwig*, 641 F.3d 1243, 1250-51 (10th Cir. 2011).

The documents before the Court, and the testimony of Officer McClain, clearly show the K-9 drug dog, Zeke, was certified on the pertinent dates in February of 2014, which was disclosed in the search warrant affidavits.  The defendants' arguments with respect

to the certification of the K-9 drug dog do not have merit. Furthermore, defendants have offered no evidence to the contrary. Both affidavits offered with the search warrant application show probable cause for issuance of the search warrants for the plane and the hotel room at the Holiday Inn in Cody, Wyoming. The Court finds that the motions to suppress will be denied.

**4. Lewis Motion in Limine as to 404(b) evidence, joined by defendant Wiles**

Defendant says his concern is that he and the government likely differ in interpretation as to what is or is not Federal Rule of Evidence 404(b) evidence. Defendant urges that the following are Rule 404(b) evidence and should be excluded:

- Lewis's prior criminal misdemeanor conviction in 2010 in California involving a marijuana grow operation, giving the impression that the "defendant's aircraft use was related to other illegal activity (other than for he is presently charged)."

- Cash or money order transactions

- Short take off device modification made to plane

- Money found at the hotel room in Cody, WY

- Offshore business titled Morris Point, LLC

- Dealings in New Mexico in the creation of the Morris Point business

- All information related to the 2010 California case

- Not announcing tail number of plane when speaking with radio tower

- Covering up windows of the plane when it was at the Cody airport facility

- Flying in inclement weather

It is argued that each of these matters should be excluded under Rule 404(b).

In response, the government asserts that the defendants have acknowledged the Court's discovery order which requires the government to provide notice of Rule 404(b) evidence five business days before trial. In his motion, Lewis (joined by Wiles) has asked the government to identify its plans to introduce the evidence identified above at this time. The government asks that the motion pursuant to Rule 404(b) should be denied or the Court defer ruling on it until trial.

In its response to Lewis's argument that it might offer evidence of a 2010 conviction, as counsel advised at the hearing, the government has given notice that it may offer evidence of Lewis's November 30, 2010 misdemeanor conviction in Humboldt County, California Superior Court and the facts and circumstances underlying that conviction. The conviction stemmed from apparent involvement with a marijuana smuggling group and is argued to be relevant to Lewis's knowledge, motive and intent in flying the unregistered aircraft. As to the list set out above in Lewis's motion in limine, none of the items identified are Rule 404(b) evidence (except the 2010 conviction) and are all evidence intrinsic to the charged offenses.

The court in *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000)(in turn citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)), states:

> Evidence is properly admitted under Rule 404(b) if four requirements are met: (1) the evidence was offered for a proper purpose under Fed. R. Evid. 404(b); (2) the evidence was relevant under Fed. R. Evid. 401; (3) the probative value of the evidence was not substantially outweighed by its

potential for unfair prejudice under Fed.R.Evid. 403; and (4) the district court, upon request, instructed the jury pursuant to Fed.R.Evid. 105 to consider the evidence only for the purpose for which it was admitted. See *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

The Court agrees that the misdemeanor conviction in 2010, if it can be received at all, noting that more than four years have passed since that conviction, would be Rule 404(b) evidence which can be received only for limited purposes and cannot be received as evidence that the defendant is guilty of the particular offenses charged in the Indictment. If such evidence is received it will be limited to an offer designed to demonstrate planning, motive, or intent on the part of the defendant. Again, it may not be used to prove that the defendant is guilty of the instant offenses. At trial, there may be issues the defense may wish to raise concerning the 2010 misdemeanor conviction and its relevance even for those purposes, which may be addressed again, if necessary, out of the presence of the jury during trial. However, it does appear that the incident giving rise to the California misdemeanor conviction bears a remarkable similarity to the facts in this case and is evidence that could be used at trial only for proper purposes; if used otherwise, the evidence would not be inadmissible under Rule 404(b).

The motion in limine will be denied. In the event that the Rule 404(b) evidence is offered at trial, and the government has indeed given notice of its intention to do so, of the items listed above, information related to defendant Lewis's the 2010 California misdemeanor conviction may potentially prejudice the defendant. Use of such evidence will be allowed only for proper purposes. The defendants shall have a continuing objection

as to this Rule 404(b) evidence. If necessary, upon request of counsel the Court may revisit the issue out of the presence of the jury at trial.

## 5. Lewis Motion for Order on Sentencing Guidelines; Wiles Motion for Order on Sentencing Guidelines.

Each of the defendants have asked the Court to determine the appropriate sentencing guideline for violation of 49 U.S.C. § 46306(b)(6)(A), as there is no specific sentencing guideline for this particular offense. USSG § 2X5.1 applies, therefore, and requires the Court to apply the most analogous offense guideline, unless there is no sufficiently analogous guideline, in which case the provisions of 18 U.S.C. § 3553 would govern.

At the hearing it was clear that the defendants believe a ruling from the Court in this regard would aid and facilitate ongoing plea negotiations. The Court finds that the motion for an order determining the appropriate sentencing guideline at this time is unquestionably inappropriate and places the Court in an improper role influencing the development and conduct of plea negotiations. This role is prohibited to the Court.

The defendants argued vigorously that the Court should instruct the United States Probation Office for this District to provide information determining the appropriate guideline now. The Court will not do so, but is unaware of anything that precludes the defendants and their counsel from discussing these matters with the probation officer who has knowledge of and has been working with the government, the defendants and their

counsel to date.  If either defendant is convicted of any offense, the defendants will be required to consult with the United States Probation Officer regarding investigation and preparation of the defendant's Presentence Report.  Counsel for the parties have an opportunity to object to anything contained in the probation officer's Presentence Report and make their arguments for appropriate revision.  This all occurs before the report is finalized and long before sentencing is held.  If convicted, the Court urges the defendants and counsel to participate actively in this process.

The motions to determine sentencing guidelines are denied.

## 6. Wiles motion to Join

Wiles's motion seeking to join Lewis's motion to dismiss and motion is limine is granted.

Accordingly, it is therefore

**ORDERED** that the Motions to Sever Defendants, Doc. 40 and Doc. 37, shall be, and are, **DENIED.  It is further**

**ORDERED** that the defendants' Motions to Dismiss, Doc. 41 and Doc. 38, shall be, and are, **DENIED.  It is further**

**ORDERED** that the Motion to Suppress, Doc. 42, joined by defendant Wiles, shall be, and is, **DENIED.  It is further**

**ORDERED** that the Motion in Limine as to 404(b) evidence, Doc. 43, joined by

defendant Wiles, shall be, and is, **DENIED, without prejudice to revisiting the issue out of the presence of the jury at trial, if the need arises.  It is further**

    **ORDERED** that the Motions for Order on Sentencing Guidelines, Doc. 39 and Doc. 44, shall be, and are, **DENIED.  It is further**

    **ORDERED** that the Motion to Join, Doc. 45, shall be, and is, **GRANTED.**

Dated this _13th_ day of _April_ 2016.

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE